## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KARISSA TRATTHEN,** | : | **No. 3:20cv2341** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| | : | |
| **CRYSTAL WINDOW & DOOR** | : | |
| **SYSTEMS PA, LLC. and** | : | |
| **CRYSTAL WINDOW & DOOR** | : | |
| **SYSTEMS LTD.,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Before the court for disposition is the defendants' motion for summary judgment in this case where Plaintiff Karissa Tratthen alleges unlawful employment retaliation. The parties have briefed their respective positions and the matter is ripe for disposition.

**Background**

Defendants Crystal Window & Door Systems PA, LLC and Crystal Window & Door Systems, LTD. (collectively "defendants") are in the business of window manufacturing. (Doc. 33, SOF ¶ 13). Their corporate office is located in Flushing, New York and they have a manufacturing plant in Dalton or Benton, Pennsylvania ("PA plant"). (Id. ¶¶ 13-14).

In 2019, plaintiff interviewed for a position of Administrative Assistant for the PA plant.  (Id.¶ 19).  Gerald Minniti, the defendants' General Manager/PA Plant Manager and Michael Delprete, the defendants' Purchasing Manager for the PA plant, ultimately hired plaintiff as their Administrative Assistant.  Id. ¶¶ 15, 17, 22).  Plaintiff began work on November 18, 2019.  (Id. ¶ 24).

On January 16, 2020, plaintiff met with a representative of the defendants' Human Resources Department, Brianne Liuzzo.  (Id. ¶ 71).  Plaintiff alleges that at the meeting she complained that Minniti inappropriately stared at her breasts and buttocks, and that she had caught him "leering" at her approximately ten (10) times.  (Doc. 35-3, Pl. Dep. at 27).  The next day, January 17, 2020, Minniti told plaintiff that her employment was terminated.  (Id. ¶ 92).

The instant lawsuit followed plaintiff's termination.  Plaintiff alleges that the defendants terminated her employment because she complained about Minniti's sexual harassment.  Her complaint raises the following two counts:

1) Retaliation Prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq.; and 2) Retaliation Prohibited by the Pennsylvania Human Relations Act, ("PHRA"), 43 PA. STAT. § 955 et seq.[1]

---

[1] Pennsylvania courts interpret the PHRA in the same manner as its federal counterparts such as Title VII. See Faush v. Tuesday Morning, Inc., 808 F.3d 208, 213 (3d Cir. 2015).  Thus, the court's analysis with respect to plaintiff's Title VII claim applies with equal force to her PHRA claims.

At the close of discovery, the defendants moved for summary judgment, bringing the case to its present posture.

**Jurisdiction**

As plaintiff brings suit pursuant to 42 U.S.C. § 2000e et seq., the court has federal question jurisdiction. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury Corp., 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine

the facts in the light most favorable to the party opposing the motion.  <u>Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  <u>Anderson</u>, 477 U.S. at 248.  A fact is material when it might affect the outcome of the suit under the governing law.  <u>Id.</u>  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial.  <u>Id.</u> at 324.

"In employment discrimination cases, the summary judgment standard 'is applied with added rigor' because 'intent and credibility are crucial issues.'" <u>Walden v. St. Gobain Corp</u>., 323 F.Supp. 2d 637, 641 (E.D. Pa. 2004) quoting <u>Stewart v. Rutgers Univ.</u>, 120 F.3d 426, 431 (3d Cir. 1997).  "Employment discrimination cases center around a single question: why did the employer take an adverse employment action against plaintiff?  Because this 'is clearly a factual

question,' Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 899 (3d Cir. 1987),

summary judgment is in fact rarely appropriate in this type of case.  Simply 'by

pointing to evidence which calls into question the defendant's intent, the plaintiff

raises an issue of material fact which, if genuine, is sufficient to preclude

summary judgment.'  Id.  See Sempier v. Johnson & Higgins, 45 F.3d 724, 732-

33 (3d Cir. 1995) (cases in which plaintiff attacks employer's stated reasons for

adverse employment action 'must be resolved by a jury and cannot be resolved

on summary judgment')."  Marzano v. Computer Science Corp., 91 F.3d 497,

509-510 (3d Cir. 1996).

**Discussion**

Defendants' motion raises two general claims. First, the defendants argue

that the factual record fails to support plaintiff's retaliation claim.  Second, they

argue that if plaintiff has alleged a claim then only one entity, Crystal Window &

Door, PA, LLC is a proper defendant.  The court will address each issue

beginning with plaintiff's allegations of retaliation.

**I.  Retaliation Claim**

Plaintiff's retaliation claim is analyzed pursuant to the framework

established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Pursuant to this framework, plaintiff must first establish a *prima facie* case of

retaliation, the burden then shifts to the defendant employer to advance a

legitimate non-discriminatory reason for its conduct.  If the defendant meets its

burden, then the burden of proof shifts back to the plaintiff to establish that the

employer's proffered reasons was merely pretext and retaliation was the real

reason for the adverse employment action.  Moore v. City of Philadelphia, 461

F.3d 331, 341-42 (3d Cir. 2006).

## A.  Plaintiff's Prima Facie Case

The elements of a *prima facie* case of retaliation Title VII, which plaintiff

must prove under step one of the McDonnell Douglas framework are: (1) plaintiff

engaged in protected employee activity; (2) adverse action by employer either

after or at the same time as the employee's protected activity; and (3) A causal

link between the protected activity and the adverse action. Abramson v. William

Patterson College of N.J., 260 F.3d 265, 286 (3rd Cir. 2001). See also Krouse v.

Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997) (describing the third

requirement as a "causal connection").

Here, the defendants allege that plaintiff did not engage in a protected

activity and cannot establish a causal connection between her meeting with

Human Resources and her termination.  The court will address these issues

separately.

### 1.  Protected Activity

First, defendants argue that plaintiff cannot establish that she engaged in

an activity protected under Title VII.

The law provides that the anti-retaliation provisions of Title VII protects employees who oppose unlawful discrimination, including those who make an "informal protest[] of discriminatory employment practices, including making complaints to management." Moore, 461 F.3d at 343 (internal quotation marks and citation omitted).  Here, plaintiff alleges that she complained about sexual harassment from defendants' general manager, Minniti, to the Human Resources representative during a meeting on January 16, 2022.  The defendants argue that plaintiff has no corroborating evidence of this alleged complaint and therefore, she has not met her *prima facie* case.  After a careful review, the court disagrees.

It is undisputed that plaintiff met with Brianne Liuzzo of the defendants' Human Resources Department the day before she was terminated.  According to the notes Liuzzo made from the meeting, plaintiff merely made complaints that Minniti did not treat her nicely.  Liuzzo testified at her deposition that she does not recall plaintiff raising the issue of Minniti staring at plaintiff.  (Doc. 34-7, Liuzzo Dep. at 37).  The notes made by Liuzzo regarding the meeting do not indicate any discussion of Minniti staring or leering at plaintiff or any claims of sexual harassment. (Doc. 34-3, Pl. Dep. at 42).

At her deposition, however, plaintiff, indicated that during the meeting with

Liuzzo she did indeed raise the issues of Minniti staring, leering, and sexual harassment. (Id. at 52).   Plaintiff also indicated that there was a lot missing from Liuzzo's notes from the meeting. (Id. at 37).

Thus, evidence exists, through plaintiff's own testimony, that she complained at the meeting of staring, leering and sexual harassment.  On the other hand, testimony exists from defendants' employee Liuzzo that she did not recall such allegations at the meeting and her notes do not memorialize any such allegations.  Clearly, whether plaintiff made the complaint about Minniti is a question of fact that will need to be resolved by the factfinder.  Summary judgment on this ground is thus inappropriate.

## 2. Causal Connection

Next, defendant contends that the plaintiff cannot establish a causal link between the protected activity she alleges and her termination.  The law provides that at the *prima facie* stage plaintiff must produce evidence that her "protected activity was the *likely reason* for the adverse employment action[.]" Carvall-Grevious v. Del. State Univ., 851 F.3d 249, 259 (3d Cir. 2017).   A plaintiff may rely on a "broad array" of evidence to demonstrate the causal link.   Id. at 259. The Third Circuit has provided the following non-exhaustive list of the evidence which may establish a causal link:  evidence of an employer's inconsistent explanation for taking the adverse action; a pattern of antagonism; or temporal

proximity "unusually suggestive of retaliatory motive." Id. at 260.

Here, plaintiff points out that she was fired merely a day after she made the complaint. Such a close proximity between her complaint and the adverse employment action is indeed suggestive of a retaliatory motive. See Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (finding that a temporal proximity of two days is unusually suggestive of causation).

Defendants argue that plaintiff cannot establish causation because before she allegedly made her complaint to Human Resources, the process of choosing her replacement had already begun. While this argument may be persuasive to a jury, it raises issues of fact which cannot be resolved at the summary judgment stage. Accordingly, defendants' position on this point is not persuasive.[2]

## B. Defendants' Legitimate Non-Discriminatory Reason

When plaintiff meets the burden of presenting evidence to establish a *prima facie* case, the burden of production shifts to the defendants to provide evidence of a legitimate non-discriminatory action for the employment decision. Moore, 461 F.3d at 342.

---

[2] Defendants also argue that Minniti did not know at the time of plaintiffs' termination that she had made any complaints to Human Resources. It is uncontested, however, the Human Resources employee who plaintiff met with on January 16, 2022 was with Minniti and Delprete when Minniti terminated plaintiff's employment on January 17, 2022. (See Doc. 33, Def. Statement of Facts ¶ 93, Doc. 35, Pl. Res. to Stmt. of Facts ¶ 93). What Minniti knew or did not know at that point, is therefore a question of fact that cannot be determined at summary judgment.

Here the defendants present the following as the legitimate non-discriminatory reasons for plaintiff's termination.  She was still in a "three-month introductory period" of employment, and she did not meet the defendants' performance expectations.  For example, her termination notice explicitly states that the reason for her termination was that she was "not meeting expectations." (Doc. 34-3, at 120 "Resignation/Termination Notice").  This evidence is sufficient to meet defendants' burden of establishing a legitimate non-discriminatory reason for plaintiff's termination.

## C. Pretext

When the defendant meets its burden of alleging a legitimate non-discriminatory reason for its action, then the burden of proof shifts back to the plaintiff to establish that the employer's proffered reason was merely pretext and retaliation was the real reason for the adverse employment action.  Moore, 461 F.3d at 342.  Plaintiff must have sufficient evidence to convince a factfinder that the employer's proffered explanation is false and that retaliation was the real reason for the adverse employment action.  Id.  "[T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and

hence infer that the employer did not act for the asserted non-discriminatory reasons." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

Here, defendants' legitimate non-discriminatory reason for plaintiff's termination is that she did not meet performance expectations.  Plaintiff casts doubt on this reason by pointing out that nothing in the record establishes that she was ever made aware of any deficiency with respect to her performance prior to her termination.

During her employment she was never written up or given a verbal warning with respect to her performance.  (Doc. 34-5, Minniti Dep. at 24). Minniti, who plaintiff worked for as an Administrative Assistant never performed a formal performance write-up regarding plaintiff.  (Id.)  Delprete, the other person for whom plaintiff served as Administrative Assistant, never made an informal or formal evaluation of plaintiff either.  (Doc. 34-6, at 32-33).  Plaintiff, has thus, cast doubt on the defendants' assertion that her performance was the reason that she was fired.

In sum, the application of the McDonnell Douglas burden-shifting analysis reveals that factual issues are present that render summary judgment inappropriate.

## II. Which Defendant Employed Plaintiff

Lastly, defendants raise the issue as to whether Defendant Crystal Window and Door Systems, LTD ("Crystal, LTD") should be dismissed as an improper defendant. Plaintiff's complaint asserts employment discrimination, and per defendants, Crystal, LTD never employed the plaintiff. Rather she was employed by Crystal Window & Door Systems PA, LLC ("Crystal, PA"). Accordingly, defendants argue that Crystal, LTD should be dismissed.

In support of their position that plaintiff worked only for Crystal PA, LLC, their brief cites to their statement of material facts, (Doc. 33, Def. Supp. Br. at 19, Doc. 38, Def. Reply Br. at 19). The statement of material facts in turn cites to the defendants' answer to the complaint. (See Doc. 33, SOF ¶ 25 citing to Doc. 8, Answer, at ¶ 61). They also cite to plaintiff's deposition where she indicated that she began working as the Administrative Assistant for Crystal Windows on November 18, 2019. (Doc. 33, Def. Supp. Br. at  19, citing Doc. 35-3, Pl.'s Dep. at 15).

Defendants' argument is unconvincing. Their answer to the complaint, without more, is insufficient to establish which entity employed the plaintiff. Additionally, plaintiff's deposition indicates that she worked for Crystal Windows, which had at least two locations, one in New York and the other in Pennsylvania, and that she was hired to work at the Pennsylvania location.   (Doc. 35-3, Pl.'s

12

Dep. at 15).  Minniti testified at his deposition that plaintiff's job responsibilities were dictated through New York, and that as the Pennsylvania plant manager he had only a small role in determining her responsibilities.  (Doc. 34-5, Minniti Dep. at 34). Additionally, New York monitored her workstation via a camera set up in the room she was located in.  (Id. at 34).

Accordingly, questions of fact exist as to the relationship between the two defendants and who was in fact the plaintiff's employer.  Summary  judgment on this point will thus be denied.

**Conclusion**

For the foregoing reasons, the defendants' motion for summary judgment will be denied.  Questions of fact exist as to whether plaintiff was retaliated against for making a complaint about sexual harassment, and the record is not clear as to which entity employed the plaintiff.  An appropriate order follows.

Date: 7/31/24

JUDGE JULIA K. MUNLEY
United States District Court